PHILLIP A. TALBERT
United States Attorney
KAREN A. ESCOBAR
Assistant United States Attorney
2500 Tulare St., Suite 4401
Fresno, CA  93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4575

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>MAJED BASHIR AKROUSH,<br>　aka Mike Akroush,<br>　aka Magic Mike,<br><br>　　　　　　　Defendant. | CASE NO.  1:15-CR-00286 ADA-BAM<br><br>NOTICE OF REQUEST TO SEAL DEFENDANT AKROUSH'S REPLY; DECLARATION OF AUSA ESCOBAR;  ORDER |

Pursuant to Local Rule 141, the United States of America, by and through its counsel of record, hereby provides notice of its request to seal the reply of Defendant Akroush, which identifies a confidential source by name at page 12, line 10, of his reply.  (Doc. 615.)

DATED:  February 23, 2023                       Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　PHILLIP A. TALBERT
　　　　　　　　　　　　　　　　　　　　　　　United States Attorney

　　　　　　　　　　　　　　　　　　　　　　　/s/ Karen A. Escobar
　　　　　　　　　　　　　　　　　　　　　　　KAREN A. ESCOBAR
　　　　　　　　　　　　　　　　　　　　　　　Assistant United States Attorney

1

# **GOVERNMENT'S REQUEST TO SEAL DEFENDANT AKROUSH'S REPLY**

The United States, by and through its undersigned counsel, hereby requests the sealing of Defendant Akroush's reply, as set forth below.

1. On February 17, 2023, Defendant Akroush filed a reply to the government's opposition to early termination of his three-year term of supervised release. In his reply, the defendant references "a government informant" and cooperator multiple times by the initials S.N. (Doc. 615, at 4, 5:2, 9-11, 15.) Notwithstanding the fact that the informant was never utilized as a confidential source for the DEA Bakersfield Resident Office, the agency which actually investigated Akroush, the defendant refers in his reply to S.N. by his actual last name at page 12, line 10.

2. During previous court proceedings in this matter, whenever the same informant's name was referenced in pleadings, the Court consistently ordered the sealing of these documents to ensure the safety and security of the informant. (Docs. 162, 179.)

3. The Court also ordered defense counsel with whom they shared any documents that were later sealed to protect the safety of the informant "not disseminate in any way the confidential information contained in that document which resulted in its sealing." (Doc. 258.)

4. The Court did allow the defense to refer to the informant by initials in a redacted version of the sealed filings. (Doc. 268, 345.)

5. The rationale for sealing the name of the information stems from the need to protect the safety and security of cooperating witnesses. *See*, *e.g.*, *Roviaro v. United States*, 353 U.S. 53, 60-62 (1957) (recognizing government's interest in protecting the confidentiality and security of its witnesses). Sealing Defendant Akroush's reply is necessary to

advance the compelling interest in protecting the confidential source because revealing his/her status as a government informant or cooperator would place him/her in danger.

6. This danger is not speculative: a landmark 2016 study conducted by the Federal Judicial Center, surveying all district court judges (active and senior), United States Attorney's Offices, federal public defender and CJA district panel representative's offices, and chief probation and pretrial services offices, concluded that "the scope of the problem" of harm to cooperators "resulting from use of court documents to identify cooperators" is "substantial." Margaret S. Williams *et al*., "Survey of Harm to Cooperators: Final Report," Federal Judicial Center (2016) (herein, "FJC Final Report"), 31. With a 71% response rate that included information from all 94 federal judicial districts, the authors stated with "confiden[ce]" that the "robust and reliable" results of the study reporting "a substantial amount of harm" were "representative of the harm experienced by witnesses and defendants/offenders." *Id*. at 5, 29–30. The study revealed at least 571 instances of harm or threat in the prior three years out of 976 questionnaire respondents, a number described by the authors as the minimum number of instances and likely understated. *See id*. at 8. "Over 80% of the incidents reported involved threats of physical harm, a minimum number of 339 instances," most often against defendants and their friends and family. *Id*. at 9. These statistics and the study's observations support the notion that "[v]iolent retaliation against cooperators is a pervasive problem, of which cases where the perpetrators are identified and prosecuted only represent a fraction." Caren Myers Morrison, "Privacy, Accountability, and the Cooperating Defendant: Towards A New Role for Internet Access to Court Records," 62 Vand. L. Rev. 921, 978 (Apr. 2009) (collecting cases of cooperators and their relatives being killed).

7. Indeed, this same concern was echoed in a September 17, 2014 memorandum to all federal judges in which three committees of the Judicial Conference of the United States—the Court Administration and Case Management Committee, the Criminal Law Committee, and the Defender Services Committee—jointly advocated for the protection of government cooperators through omitting from court documents the cooperators' identities.  *See* Memorandum from Committees on Court Administration and Case Management, Criminal Law, and Defender Services, to United States Judges (Sept. 17, 2014), 2 (herein "Joint Memorandum").

8. If a substantial probability of endangering cooperators through revelation of their status as cooperators did not exist, it is difficult to discern the justification for the Joint Memorandum, which states that "cooperation information" found in "criminal case filings" is "being used to threaten or harm cooperating individuals," and urges that courts ameliorate that problem by attempting to "obscure cooperators' identities to ensure their safety."  Joint Memorandum at 1.

9. Without sealing, the identified informant will face a substantial likelihood that his/her safety will be endangered.

10. Sealing does not require particular past threats to the identified cooperator.  Sealing of court documents in these circumstances is routine across the country.  *See* Robert Timothy Reagan, "Sealing Court Records and Proceedings:  A Pocket Guide, Federal Judicial Center (2010)," at 13 ("It is common for courts . . . to either temporarily or permanently seal records of cooperation to protect the safety of the cooperating defendants and the defendants' families."); FJC Final Report at 30 (citing chief district judges' reports that among measures taken by district courts is "sealing of docket entries . . . sua sponte . . . to shield cooperation information.").

11. Even more systematic (*i.e.*, less narrowly tailored) approaches have been designed and approved by courts across the country.  For example, on July 9, 2007, the judges of the Eastern District of Pennsylvania approved a protocol for all criminal cases mandating that all documents related to pleas, sentencing, and related orders would be designated with a generic title ("Plea Documents, Sentencing Documents and Judicial Documents"), regardless of their content, and available for inspection only in person at the Office of the Clerk, rather than online.  *See* Protocol, E.D. Pa. (July 9, 2007), available at http://www.paed.uscourts.gov/documents/notices/notcrpro.pdf, (last visited February 23, 2023).  This protocol was driven by an "immediate need to address problems engendered by an Internet website which uses publicly available information to identify and publicize individuals suspected of cooperating with law enforcement agents appearing on the docket as accessed through the court's CM/ECF system." *Id.*

12.  In light of the foregoing, the United States respectfully requests that this Court seal Defendant Akroush's reply.

DATED: February 23, 2023.                           Respectfully submitted,

PHILLIP A. TALBERT
United States Attorney

/s/ Karen A. Escobar_____
KAREN A. ESCOBAR
Assistant United States Attorney

5

## DECLARATION OF AUSA ESCOBAR

I, Karen A. Escobar, declare as follows:

1. I am an Assistant United States Attorney for the Eastern District of California and have been so employed for over thirty-two years and over thirty-five years as a prosecutor. I am the Assistant U.S. Attorney assigned to this matter. I handled the investigation and prosecution of this matter.

2. The statements contained in the government's request to seal Akroush's reply are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 23rd day of February, 2023.

      /s/ Karen A. Escobar
     KAREN A. ESCOBAR

## ORDER

Having considered the government's request to seal Defendant Akroush's reply filed herein on February 17, 2023, and having weighed the competing interests of the defendant, the public, and the confidential source,

IT IS ORDERED that Defendant Akroush's reply found at docket entry 615 in this matter be SEALED.

IT IS SO ORDERED.

Dated:   February 24, 2023                                      
                                         UNITED STATES DISTRICT JUDGE